## CLAY S. KREVOLIN *v.* CHARLES W. DIMMICK

SUPERIOR COURT     JUDICIAL DISTRICT OF     FILE No. 241178
HARTFORD-NEW BRITAIN AT HARTFORD

Memorandum filed August 15, 1983

*Krevolin, Feinstein & Freed,* for the plaintiff.

*F. Timothy McNamara,* for the defendant-third party plaintiff.

*Halloran, Sage, Phelon & Hagarty,* for the third party defendant (State Farm Fire and Casualty Company).

L. DORSEY, J. This action was instituted by the plaintiff, Clay S. Krevolin, against the defendant, Charles W. Dimmick, by writ, summons and complaint dated

January 9, 1980. The complaint contains allegations that on or about September 11, 1978, Krevolin was struck in the eye with a piece of chalk thrown by Dimmick during a geology class Krevolin was attending. It is further alleged that the class was being conducted by Dimmick and that, at all times mentioned therein, Dimmick was employed by Central Connecticut State College and was acting within the scope of his employment. Krevolin alleges that as a result of Dimmick's negligence and carelessness, he suffered certain injuries to his eye, nervousness, as well as great pain and mental anguish, some of which may be permanent in nature. Subsequent to suit against him, Dimmick made timely demand upon State Farm to defend and indemnify him in the suit, but State Farm refused to do so.

Dimmick sought and received court approval to implead as a third party defendant State Farm Fire and Casualty Company (State Farm). Dimmick's third party complaint contains the following allegations: On August 29, 1972, Dimmick purchased from State Farm a homeowner's insurance policy, which was in effect on September 11, 1978, the date of the chalk-throwing incident alleged by Krevolin. Under the terms of the policy, under "Section II Coverages," coverage was afforded to Dimmick for any personal liability arising out of any bodily injury to another, including coverage for medical payments to others. Despite demand made upon it, State Farm refused to defend its insured and denied coverage under its policy of insurance.

Dimmick claimed money damages against State Farm, including the costs of defense, as well as the amount of the judgment, if any, which Krevolin might obtain against him. State Farm answered Dimmick's complaint and posed a special defense. State Farm's answer contained admissions as follows: On the date of the alleged occurrence, Dimmick was insured by State Farm under a homeowner's policy. Under the

terms of that policy, "Section II Coverages," Dimmick was covered for any liability arising out of any bodily injury to another person, including medical payments to others. Demand for defense and indemnity was made upon State Farm by Dimmick, but State Farm denied him coverage. Although coverage was afforded to Dimmick under "Section II Coverages," State Farm alleged that the action complained of is specifically excluded under an exclusionary provision in the policy.

As a special defense, State Farm posed the policy exclusion of "bodily injury . . . arising out of business pursuits of any insured," and claimed that Dimmick was, at the time of the incidents alleged by Krevolin, "engaged in a business pursuit . . . [a] job as a teacher at Central Connecticut State College."

On February 22, 1983, State Farm filed a motion for summary judgment as to Dimmick, requesting this court, as a matter of law, to hold that because of that exclusion, it has no duty to defend nor to indemnify Dimmick in the suit brought against him.

On March 14, 1983, Dimmick filed a motion for summary judgment as to State Farm, claiming that State Farm's answer and special defense clearly demonstrate an absence of a genuine issue of material fact concerning its duty to defend Dimmick and claiming judgment, accordingly, as a matter of law.

The essential facts for the purposes of the motions under consideration are not in dispute between the parties. The sole issue is whether, under the policy, State Farm has a duty to defend Dimmick, or whether the action complained of is specially excluded under Exclusions, § 1 (d) of the policy of insurance.

Under "Section II Coverages" of the policy issued to Dimmick, a copy of which has been submitted in support of State Farm's motion for summary judgment,

State Farm has agreed to "pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury . . . to which this insurance applies, caused by an occurrence." In addition, State Farm "shall have the right and duty, at its own expense, to defend any suit against the insured seeking damages on account of such bodily injury . . . even if any of the allegations of the suit are groundless, false or fraudulent." Section II, Coverages, Coverage E, p. 6. Coverage F, under Section II, further states, in pertinent part, that "[t]he Company agrees to pay all reasonable medical expenses . . . to or for each person who sustains bodily injury to which this insurance applies." Section II, Coverages, Coverage F, p. 6. In denying coverage and in failing to appear for and to defend its insured, State Farm admits that, while the above coverage is afforded to Dimmick, the suit brought against Dimmick is specifically excluded by Exclusions, § 1 (d): "This policy does not apply . . . under Coverage E Personal Liability . . . (d) to bodily injury . . . arising out of business pursuits of any insured except as activities therein which are ordinarily incident to non-business pursuits."

For the court accurately to determine the issues of this controversy, at the outset it must consider the scope of an insurer's duties under its contract with its insured, as set forth in the law relative thereto and in the four corners of the contract. See *Firestine* v. *Poverman,* 388 F. Sup. 948, 951 (D. Conn. 1975); *Schurgast* v. *Schumann,* 156 Conn. 471, 489, 242 A.2d 695 (1968). As to the policy itself, all relevant portions must be considered to determine coverage. *Firestine* v. *Poverman,* supra.

The established rule of law in Connecticut is that the duty of an insurer to defend its insured is determined by the allegations in the complaint brought against the insured. *Schurgast* v. *Schumann,* supra; *Missionaries*

*of Company of Mary, Inc.* v. *Aetna Casualty & Surety Co.,* 155 Conn. 104, 110, 230 A.2d 21 (1967); *Smedley Co.* v. *Employers Mutual Liability Ins. Co.,* 143 Conn. 510, 516, 123 A.2d 755 (1956). The duty to defend means that "the insurer will defend the suit, if the injured party states a claim which . . . is for an injury 'covered' by the policy; it is the claim which determines the insurer's duty to defend." *Lee* v. *Aetna Casualty & Surety Co.,* 178 F.2d 750, 751 (2d Cir. 1949); see also *Alderman* v. *Hanover Insurance Group,* 169 Conn. 603, 363 A.2d 1102 (1975); *Missionaries of Company of Mary, Inc.* v. *Aetna Casualty & Surety Co.,* supra. The seriousness with which the courts take this duty is exemplified by the fact that the duty to defend must be exercised regardless of whether the original suit is totally groundless or regardless of whether, after full investigation, the insurer got information which categorically demonstrates that the alleged injury is not in fact covered. *Lee* v. *Aetna Casualty & Surety Co.,* supra, 751; *Missionaries of Company of Mary, Inc.* v. *Aetna Casualty & Surety Co.,* supra, 112; *Smedley Co.* v. *Employers Mutual Liability Ins. Co.,* supra, 516. In addition, this contractual duty to defend its insured must be exercised by the insurer irrespective of the insurer's ultimate liability to pay a judgment under its policy, so long as the allegations of the complaint fall within the coverage. *Firestine* v. *Poverman,* supra, 950; *Missionaries of Company of Mary, Inc.* v. *Aetna Casualty & Surety Co.,* supra, 112; *Smedley Co.* v. *Employers Mutual Liability Ins. Co.,* supra, 516–17; 50 ALR 458, 475.

Krevolin's complaint alleges in the first count that, while he was a student at Central Connecticut State College, Dimmick negligently threw a piece of chalk at a student, which piece of chalk struck Krevolin in the eye. He further alleges that the incident took place during a geology class conducted by Dimmick and that,

"at all times mentioned herein, the defendant, Charles Dimmick, was employed by Central Connecticut State College and was acting within the scope of his employment." In its attempted justification for its failure to defend Dimmick against these allegations, State Farm has cited a number of cases from jurisdictions other than Connecticut, all purportedly standing for the proposition that the exclusion herein (the "business pursuits" exclusion) takes coverage away from Dimmick and relieves State Farm of its duty to uphold its contract with him. It is upon this exclusion, and upon it alone, that State Farm relies.

The exclusion upon which State Farm relies to avoid coverage in this instance is merely one of several exclusions listed in the policy. An insurance policy must be construed as a whole, and all its relevant provisions must be considered in connection with it. *Firestine* v. *Poverman,* supra, 951. The insurance policy in this case, as in *Firestine* v. *Poverman,* supra, contains two other exclusions that stand on either side of exclusion "(d)," the business pursuits exclusion, and give it context. "This policy does not apply . . . (c) to bodily injury . . . arising out of the rendering of or failing to render *professional services";* (emphasis added) Exclusion 1 (c), p. 7; or to "(e) bodily injury . . . arising out of any premises, other than the insured premises, owned, rented or controlled by any insured, but this exclusion does not apply to bodily injury to any residence employee *arising out of and in the course of his employment* by any insured." (Emphasis added.) Exclusion 1 (e), p. 7; *Firestine* v. *Poverman,* supra, 951–52. What constitutes a "business pursuit" then, and therefore the appropriateness of State Farm's denial of coverage, must be determined in the context of the policy. An attempt should be made to determine what the insurer itself meant by the language used.

All three of the above quoted exclusions deal, in some way or another, with an insured's occupation. One is termed "professional services," one "in the course of employment" and another as "business pursuits." It is naturally to be assumed that by the use of these terms, a certain precise meaning was meant for each, distinguishable and separate from the other.

The precise issue confronting this court was presented in *Firestine* v. *Poverman,* supra. It appears to be the only case Dimmick or State Farm has uncovered which analyzes what appears to be a very similar insurance policy and which applies Connecticut law.

*Firestine* involved a motion for summary judgment filed by the third party defendant, Middlesex Mutual Assurance Company (Middlesex), which had been impleaded by its insured to defend and indemnify him under the homeowner's policy issued to his father. The facts of the case, as here, were not in dispute between the third parties, and are as follows:

The insured, at the time of the occurrence alleged in the main action, was an employee of another defendant, and was assigned to maintain a swimming pool on his employer's premises. A homeowner's policy had previously been issued to his parents by Middlesex. On the date alleged, the plaintiff Firestine, age two, wandered through the gate of the pool area and subsequently drowned. The insured admitted that, after he performed his employment services, he failed to latch the gate through which the plaintiff later walked.

Again, as in this case, Middlesex claimed that the factual pattern fell within the exclusion referred to as the "business pursuits" exclusion, and that it therefore had no duty to defend or to indemnify its insured. The language therein contained, as in all the other relevant exclusions, was approximately the same as found in the

exclusions of State Farm's policy in the present case. Middlesex's sole position was that the insured's failure to latch the gate arose out of his "business pursuits."

In denying the insurance company's motion for summary judgment, the court relied on three established canons of construction under Connecticut law, and applied them to the issues raised.

The first rule of construction is that when an exclusion is specially relied upon to withdraw coverage from a specific liability, the burden falls on the insurer to prove that exception to the covered risk. *Firestine* v. *Poverman,* supra, 951. Secondly, language in an insurance contract is to be given its natural and ordinary meaning, unless that language is unclear or ambiguous, in which case it must be construed to favor the insured, since the insurer wrote the language. *Firestine* v. *Poverman,* supra, 951. Thirdly, the insurance contract must be construed as a whole, and all of its relevant provisions are to be considered with one another. *Firestine* v. *Poverman,* supra, 951.

When this established Connecticut law was applied to the facts of the case, the *Firestine* court immediately found that the "business pursuits" exclusion was not applicable since the policy exclusions used three different terms to exclude "for-gain" activities, and those terms were intentionally distinguishable from one another. *Firestine* v. *Poverman,* supra, 952. If the insurer meant to make "business pursuits" synonymous and coextensive with "in the course of employment" or with "rendering professional services," it would have used the same language: "The most logical interpretation of 'business pursuits' as used in this contract is therefore one that distinguishes them from these two other for-gain activities. The policy makes clear that when the insurer meant 'in the course of employment' it was capable of and willing to say so; when it instead

said 'business pursuits' it must be assumed that something different was meant." *Firestine* v. *Poverman,* supra, 952. Thus, it was patently clear to the court that the act, as alleged and determined by the allegations made against the insured, did not bring it within the business pursuits exception. "This act was within the course of his employment and therefore was not an act arising out of a 'business pursuit.' " *Firestine* v. *Poverman,* supra, 952.

The *Firestine* holding and its rationale fall squarely upon the case at hand. Krevolin has alleged, in essence, that Dimmick was acting in his course of employment when the alleged incident and injuries took place. Dimmick, in the requests for admissions, deemed true, does not dispute that, while conducting his class as an employee of the state of Connecticut, he threw chalk at a student disrupting the performance of his duties. As State Farm itself has said in its memorandum in support of its motion for summary judgment, "the act was integrally connected with his employment." Regardless of whether Krevolin's allegations against Dimmick are groundless and regardless of whether State Farm has an ultimate duty to indemnify, the coverage is clearly not excludable under the "business pursuits" exclusion, and State Farm has a duty to defend its insured. See *Firestine* v. *Poverman,* supra, 950; *Missionaries of Company of Mary, Inc.* v. *Aetna Casualty & Surety Co.,* supra, 112; *Smedley Co.* v. *Employers Mutual Liability Ins. Co.,* supra, 516. The established law in Connecticut relative to an insurer's duty to defend its insured is that the duty to defend may be present even if the duty to indemnify may not be. *Missionaries of Company of Mary, Inc.* v. *Aetna Casualty & Surety Co.,* supra, 112; *Smedley Co.* v. *Employers Mutual Liability Ins. Co.,* supra, 516–17. Indeed, in Connecticut, the failure to defend when the allegations of a third party's complaint fall within the

coverage of the policy results in the insurer's being liable for the entire judgment rendered against the insured, even though the policy or the facts ultimately demonstrate that no indemnity is due and owing. *Schurgast* v. *Schumann,* supra; *Missionaries of Company of Mary, Inc.* v. *Aetna Casualty & Surety Co.,* supra.

Cases of other jurisdictions cited by State Farm, including, principally, *Reliance Ins. Co.* v. *Fisher,* 164 Mont. 278, 521 P. 2d 193 (1974), do not have the persuasive force of the analysis in *Firestine* v. *Poverman,* supra, based, as it is, on principles of Connecticut law.

The motion for summary judgment of State Farm, the third party defendant, is denied.

The motion for summary judgment of Dimmick, the third party plaintiff, is granted.