**NATIONAL FIRE AND MARINE INSURANCE COMPANY**

**v.**

**Frank PICAZIO, Jr. and Antoinette Picazio, dba Ponderosa Park.**

**Civ. No. H–83–100.**

United States District Court, D. Connecticut.

May 13, 1983.

On Motion to Amend Judgment April 23, 1984.

Michael Feldman, Michael F. Dowley, Hoberman, Pollack & Roseman, P.C., Hartford, Conn., for plaintiff.

Paul M. Guernsey, Traystman & Guernsey, New London, Conn., Ronald Stevens, Shea, Stevens & Harris, Niantic, Conn., for defendants.

## RULING ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

CLARIE, Senior District Judge.

Pursuant to Rule 56, Fed.R.Civ.P., the plaintiff has moved for summary judgment on its declaratory judgment action, requesting the Court to determine whether or not it is obligated to defend or indemnify the defendants in a pending state court lawsuit. The defendants contend that the insurance policy issued by the plaintiff extends coverage to liability for the reckless and wanton conduct alleged in the underlying suit. The Court finds that the state court suit seeks to impose liability on the defendants by reason of the sale or service of alcoholic beverages, and that such liability was explicitly excluded from the coverage in the insurance policy issued by the plaintiff. The plaintiff's motion for summary judgment is accordingly granted.

*Facts*

The present declaratory judgment action, between parties of diverse citizenship, stems from an underlying Connecticut state court suit brought by the administratrix of the estates of her husband and two children. That complaint alleges that a driver was served alcohol, while already intoxicated, by the defendants, "all of said defendants being in the retail liquor business for consumption of alcohol on the premises," and that the driver then negligently caused his vehicle to collide with the administratrix's vehicle, causing three deaths, and physical injuries to the administratrix. The first four counts of the complaint allege a cause of action under Connecticut's Dram Shop Act, Conn.Gen.Stat. § 30–102, for which the defendants have separate insurance that is defending them. The fifth count, however, alleges that the defendants' conduct concerning the sale or service of alcohol to the driver was wanton and reckless.[1] The defendants seek to have the plaintiff defend and indemnify them as to this count. The plaintiff seeks a declaratory judgment, that because of the exclusion provision in the policy it issued to the defendants, it is not obligated to defend or indemnify them.

No material issues of fact are presented in this case.

---

1. After incorporating previous paragraphs into Count Five, paragraph 23 of that Count states:

"23. The defendants, Chopping Block Restaurant, Inc. and/or Ponderosa Park and Campgrounds, Mike Lucas, Frank Picazio and/or their agents, servants and employees were engaged in wanton and reckless misconduct in that:

(a) They served and continued to serve alcoholic liquors and beer to an intoxicated individual, Mike P. Teply, although they knew or should have known that said Mike P. Teply would be operating a motor vehicle upon the public highways after leaving their establishment, creating an unreasonable risk of harm to others and a reckless and wanton disregard of the just rights or safety of others lawfully using said highways, more particularly the plaintiffs herein;

(b) They failed to provide proper supervision of the serving of alcoholic liquors and beer to their patrons and/or invitees;

(c) They failed to provide proper control of the serving of alcoholic liquors and beers to their patrons and/or invitees;

(d) They failed to provide competent personnel or properly trained bartenders so as to properly supervise and control the serving of alcoholic liquors and beers to their patrons and/or invitees;

(e) They expressly or impliedly relinquished all supervision and control over the serving of alcoholic liquors and beer to their patrons and/or invitees thereby allowing said patrons and/or invitees to serve themselves;

(f) They expressly or impliedly allowed their patrons and/or invitees, particularly the said Mike P. Teply, to drink excessive quantities of alcoholic liquors and beer; the defendants knew when they served said alcoholic liquors and beers to the intoxicated Mike P. Teply that he intended to drink all of it without ceasing, that he could not be safely trusted with it, and that as a result of same serious harm or injuries were likely to result to others."

## Discussion

The "Owners', Landlords', and Tenants' Liability Insurance" policy which the defendants purchased from the plaintiff National Fire and Marine Insurance Company, and which was in effect at the time of the occurrence complained of in the underlying state court lawsuit, contained among others, the following exclusion:

"This insurance does not apply:

. . . . .

(h) to bodily injury or property damage for which the insured or his indemnitee may be held liable

(1) as a person or organization engaged in the business of manufacturing, distributing, selling or serving alcoholic beverages, or

(2) if not so engaged, as an owner or lessor of premises used for such purposes, if such liability is imposed

(i) by, or because of the violation of, any statute, ordinance or regulation pertaining to the sale, gift, distribution or use of any alcoholic beverage, or

(ii) by reason of the selling, serving or giving of any alcoholic beverage to a minor or to a person under the influence of alcohol or which causes or contributes to the intoxication of any person;

but part (ii) of this exclusion does not apply with respect to liability of the insured or his indemnitee as an owner or lessor described in (2) above;"

Under part (ii) above,[2] the policy explicitly excludes coverage for liability arising from the sale or service of alcohol to a person under the influence of alcohol or which causes or contributes to the intoxication of any person. The plaintiff contends that the underlying allegations in Count Five of the state court action involve the sale or service of alcohol, and as such, coverage

for liability arising from such sale or service of alcohol was explicitly excluded by the policy.

The defendants do not contend that the structure or language of Exclusion (h) is ambiguous. Rather, they urge that the liability alleged in Count Five arises not by virtue of the sale or service of alcohol, but rather from some separate, additional reckless or wanton conduct. They represent that Count Five states a cause of action recently defined in Connecticut by the Supreme Court's decision in *Kowal v. Hofher*, 181 Conn. 355, 436 A.2d 1 (1980), in which, they contend, liability was imposed only for outrageous conduct *in addition* to the sale or service of alcohol, and not merely for the sale or service itself. Because Count Five was patterned after *Kowal*, they urge that any liability alleged in it does not arise "by reason of the selling, serving, or giving of any alcoholic beverage," as required for the exclusion in part (ii) to apply, but rather by virtue of separate, outrageous conduct, similar to that which they contend was the true basis of liability in *Kowal*.

The defendants' understanding of the basis for liability in *Kowal*, however, is mistaken. *Kowal* reaffirmed that there is no common-law action in Connecticut in negligence for the sale or service of alcohol to an intoxicated person, and then considered the circumstances of wanton and reckless conduct. In formulating the issue before it, the Supreme Court wrote:

"The question before us, then, is whether those policy considerations which might justify protecting both a vendor and a social host from common-law liability for the injurious consequences of negligent *conduct in the sale or serving of alcoholic beverages* to another also apply when *the conduct* constitutes wanton and reckless misconduct.

---

2. As stated in the last sentence of Exclusion (h), part (ii) does not apply if the insured is an owner or lessor, rather than a person or organization engaged in the business of selling or serving alcohol. While the defendants believe that they will eventually show that they were merely owners or lessors, the complaint in state

court alleges that they were engaged in the retail liquor business, and the parties agree that they are presently bound by those allegations. For purposes of the present summary judgment motion, since the defendants are alleged to be in the business of serving alcohol, part (ii) of Exclusion (h) applies.

We hold that they do not." *Id.* at 360–61, 436 A.2d 1 (emphasis added).

It is clear that "the conduct" which the Court considered the basis for liability was the wanton and reckless sale or service of alcoholic beverages, and not some separate, additional misconduct. In *Kowal,* it was the sale or service of alcoholic beverages, itself, in a wanton and reckless manner, which gave rise to the imposition of liability. This is further borne out by the analogous decisions from other jurisdictions, which the Court considered in support, and which also involved the sale or service of alcoholic beverages. Contrary to the defendants' contentions, liability was imposed in *Kowal* by reason of the selling, serving, or giving of alcoholic beverages, and not because of some independent conduct.

■ The wrongful conduct alleged in Count Five in the underlying state court complaint is similarly the service of alcoholic beverages to an intoxicated person, and not some other, independent conduct. Each of the paragraphs of Count Five which detail the defendants' conduct uses the words "served" "served," or "serving".[3] It is clear that, following *Kowal,* the liability alleged in the state court action arises "by reason of the selling, serving or giving of [an] alcoholic beverage", as stated in part (ii) of Exclusion (h).

The Court finds that Exclusion (h) does apply to the conduct alleged in Count Five of the underlying state court complaint. Since the complaint does not allege acts for which the plaintiff could be held liable under the policy it issued to the defendants, the plaintiff is not obligated to defend or indemnify the defendants in the underlying state court action. *Hogle v. Hogle,* 167 Conn. 572, 576, 356 A.2d 172 (1975). The plaintiff's motion for summary judgment is accordingly granted.

SO ORDERED.

## ON MOTION TO AMEND JUDGMENT

The plaintiff, National Fire and Marine Insurance Company, ("National Fire and Marine") has moved the Court, pursuant to Rules 59(e) and 60(b), Fed.R.Civ.P., to amend its previous judgment in which the Court declared that the plaintiff, under the then existing complaint, owed the defendants, Frank and Antoinette Picazio, d/b/a Ponderosa Park ("Picazios") neither a duty to defend nor an obligation to indemnify them in the underlying state court action. Essentially, National Fire and Marine requests the Court to declare that, notwithstanding new allegations brought by the state court plaintiff in the amended complaint, National Fire and Marine still has no obligation to defend or indemnify the Picazios in the state court suit. As the Court finds that the new state court complaint with its amended allegations now presents facts which could trigger policy coverage, it denies National Fire and Marine's motion and rules that National Fire and Marine is legally obligated to provide the Picazios with counsel-defense in the state court proceedings.

### Facts

Familiarity with the facts as they existed at the time of the Court's May 13, 1983 ruling is assumed. A brief sketch of the present posture of the case, however, is in order.

The Court's prior ruling found that, under the allegations set out in the original complaint, an exclusionary clause in the insurance contract between National Fire and Marine and the Picazios "explicitly exclude[d] coverage for liability arising from the sale or service of alcohol to a person under the influence of alcohol or which causes or contributes to the intoxication of any person." *National Fire and Marine Insurance Company v. Frank Picazio, Jr. and Antoinette Picazio, d/b/a Ponderosa Park,* 583 F.Supp. 624 at ___–___ (D.Conn. 1983). (hereinafter *"National I"*). *National I* found further that the original underlying state court complaint alleged that the Picazios were liable for the "service of alcoholic beverages to an intoxicated person." Thus, *National I* held that the

---

**3.** See footnote 1, *supra.*

exclusion applied and that National Fire and Marine owed the Picazios neither a duty to defend nor a duty to indemnify them in the state court action.

Footnote 2 of *National I* stated, however, that the exclusion clause would not apply were the Picazios mere owners or lessors rather than persons "engaged in the business of selling or serving alcohol." Inasmuch as the complaint did allege that the Picazios distributed alcohol at the picnic in question, the Court, bound by the facts as alleged, found that the exclusion clause applied.

After this Court issued its May 13, 1983 ruling, the state court plaintiffs amended their complaint by adding a new count, Count 6. Count 6 included no reference to the Picazios as sellers or servers of alcohol. Rather, Count 6 was grounded upon a theory of "premises liability." The gravamen of Count 6 is that the Picazios failed to properly control or supervise the picnic premises.

### Discussion of the Law

■ As this case invokes the Court's diversity jurisdiction, Connecticut substantive law governs. *Erie Railroad Company v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1937). Connecticut law in this area is well-settled. An insurer must defend its insured whenever a complaint against said insured states "facts which appear[ ] to bring [a plaintiff's] claimed injury within the policy coverage." *Missionaries of Company of Mary, Inc. v. Aetna Casualty and Surety Co.,* 155 Conn. 104, 110, 230 A.2d 21 (1967). The insurer cannot avoid this "duty by looking beyond the allegations of, [the plaintiff's] complaint and by importing facts learned from outside sources." *Id.* at 111, 230 A.2d 21. Interpreting this rule, the Connecticut courts have required the insurer to defend even when the allegations against its insured, as pleaded, were "groundless," *id.,* at 112, 230 A.2d 21; *Krevolin v. Dimmick,* 39 Conn.Supp. 44, 52, 467 A.2d 948 (1983), and *cases cited therein,* and even when

requiring a defense would seem to eviscerate the clear, plain intent of a clause excluding coverage. *Id.* (holding that a homeowners policy insurer had to defend a college professor, notwithstanding the presence of a standard "business pursuits" exclusion, even though said professor admitted that he was acting within the scope of his employment when he threw a piece of chalk, thereby injuring the plaintiff-student, in an attempt to discipline another student who was disrupting his class.) In the underlying state action, the state court plaintiff's new Count 6 alleges facts which would trigger coverage under the Picazios' "Owners', Landlords', and Tenants' Liability Insurance" contract with National. Therefore, under the well-settled Connecticut rule in the *Missionaries* case, National Fire and Marine must defend the Picazios in the state court suit.

■ Equally as well-settled, however, is the Connecticut rule that "the duty to defend has a broader aspect than the duty to indemnify." *Missionaries of Company of Mary, supra,* 155 Conn. at 110, 230 A.2d 21. This decision speaks only to the issue of the duty to defend and offers no opinion as to National Fire and Marine's ultimate duty to indemnify. It may well be established, once the facts have been adduced in the state court trial, that the Picazios are not liable under the "premises liability" theory advanced by Count 6. It may be possible that the various defenses proposed by National Fire and Marine in this case (i.e., statute of limitations, collusion between the state court plaintiffs and the Picazios in creating Count 6), may well preclude liability on the Picazios' part or any obligation on National's part to indemnify the Picazios. Such defenses, however concrete or illusory they may prove to be, should be interposed at a later date, and are irrelevant to a discussion of the duty to defend under the holding of *Missionaries of Company of Mary, supra.*

Therefore, the Court denies National Fire and Marine's motion to amend the previous ruling in this case, requesting that the Court exclude it from any obligation to

defend under Count 6 of the amended complaint; and hereby finds that National Fire and Marine does have a legal obligation to defend the Picazios under the allegations of Count 6 in the underlying state court action.

SO ORDERED.